FRANK B. GARY, Circuit Judge: I concur in the opinion of Mr. Justice Cothran, except in so far as he holds that there was error in not holding that the State, in the matter of distributing free antitoxin occupied the position of a charitable institution and was not on that account liable either at common law or under the Act of 1918, for the negligence of its agents. In my opinion the Acts and conduct of the State in reference to the free distribution of antitoxin are referable to the State under its police power, to promote the health of its citizens, rather than to an intention to assume and occupy the position of a charitable or eleemosynary institution.

---

11312

MARION, RECEIVER v. WESTON *ET AL.*
MOORE v. ARTHUR *ET AL.*

(119 S. E., 582)

1. FRAUDULENT CONVEYANCES—DEBTOR'S INTENTION DETERMINES VALIDITY OF ASSIGNMENT, REGARDLESS OF PREFERRED CREDITOR'S KNOWLEDGE.—Under Civ. Code 1912, § 3723 *et seq.*, relating to assignments for the benefit of creditors, it is the intention of the debtor, not the creditors or assignees, which determines the *bona fides* or *mala fides* of an assignment. If the debtor has the intention to prefer a creditor, the assignment is inoperative, regardless of whether the preferred creditor has knowledge of that intention.

2. FRAUDULENT CONVEYANCES—EVIDENCE HELD TO SHOW THAT ASSIGNMENT WAS MADE TO PREFER CREDITOR.—Evidence *held* to show that an assignment to a creditor, of cotton and the proceeds of insurance policies, by an insolvent debtor was made with the fraudulent intent of preferring that creditor.

---

NOTE: On necessity of participation by the grantee or transferee in the fraud of the grantor or transferer in order to avoid a voluntary conveyance or transfer as against creditors, see note in 17 A. L. R., 728.

As to participation by purchaser in fraud of vendor which will invalidate the transfer for good consideration as against vendor's creditors, see notes in 31 L. R. A., 609; 32 L. R. A., 33 and 36 L. R. A., 335.

Before MAULDIN, J., Richland, November, 1922. Reversed.

Action by W. B. Marion, receiver (appointed in supplemental proceedings in the case of M. De Veaux Moore against W. W. Arthur and another) against F. H. Weston and others. From a judgment unfavorable to the receiver, he appeals. Reversed.

The report of J. C. Townsend, Master for Richland County, follows:

To the Presiding Judge of the Court of Common Pleas for Richland County:

This cause was referred to me by order of his Honor, I. W. Bowman, presiding Judge, October, 1921, for the purpose of taking the testimony upon all the issues raised herein, and make a report thereof, together with my findings and conclusions upon the issues of law and fact.

Pursuant to this order of reference I have taken the testimony, attended by the parties themselves or by counsel for the same, which is submitted with this report.

This is an action commenced by W. B. Marion, who was appointed receiver for that purpose by order of Judge W. H. Townsend, dated August 24, 1921, upon hearing and proceedings had in supplemental proceedings in the case of *M. De Veaux Moore v. W. W. Arthur and Anne Moore Arthur,* for the purpose of collecting a judgment and execution in said cause against the said W. W. Arthur and Anne Moore Arthur.

The real controversy and issue in this matter is as to the right of W. B. Marion, receiver, for and in behalf of the judgment creditor, M. De Veaux Moore, to have the proceeds of certain insurance policies, which policies were assigned by W. W. Arthur and Anne Moore Arthur to Francis H. Weston, one of the defendants, who was at the time of the assignment, and still is, one of the attorneys for the said Arthurs; and also the right of the same receiver to have, in behalf of the plaintiff, certain cotton, either nine or ten

bales, certificates or warehouse receipts for five bales of which were delivered by the defendant, W. W. Arthur, to said F. H. Weston, in December, 1921, and the warehouse receipts for the balance of which were delivered by said Arthurs to W. T. Aycock, in January and February, 1921.

From the evidence presented before me, I make the following:

### FINDINGS AND CONCLUSIONS OF FACTS

1. That the defendants, W. W. Arthur and his wife, Anne Moore Arthur, procured and obtained from M. De Veaux Moore, father of Mrs. Arthur, in 1915 and 1916, a conveyance to Mrs. Arthur of a tract of land containing some 387 acres, situated at Cane Savannah, Sumter County, being all the land owned by said Moore, and also an assignment by said Moore to Mrs. Arthur, of a valuable bond and mortgage for the sum of $20,000, and also the transfer and assignment by said Moore to Mrs. Arthur of all his furniture and silverware; the said conveyance, assignments, and transfers covering and embracing all of the property owned by the said Moore at that time.

These assignments were procured by Mr. and Mrs. Arthur from the said Moore, a man of less than normal intellect and capacity, while he lived with them, and while they stood in a close confidential, family, and business relation, to said Moore, under and upon whose advice he relied and trusted. And in an action subsequently commenced by Mr. Moore against Mr. and Mrs. Arthur, for that purpose, all these conveyances, assignments, and transfers were set aside and canceled as fraudulent, null, and void, by a decree rendered in the Court of Common Pleas for Sumter County by I. W. Bowman, Circuit Judge, which decree bears date January 3, 1921.

The said decree, in addition to setting aside and canceling the conveyance (Mr. and Mrs. Arthur having sold and disposed of the bond and mortgage) gave judgment against them for the moneys used by them for their own purposes,

and also for the rents and profits of the land during the time they had held and used the same, including rents for 1916, 1917, and 1918, and also gave judgment for the rental value of the lands for the years 1919 and 1920, at the rate of $1,200 for each of said year.

2. Upon this decree judgment was duly entered in Sumter County, transcripted to and docketed in Richland County. The judgment amounting to $24,512.83. And the same appears as judgment roll No. 13851, of Richland County.

3. Upon this judgment execution was duly issued to the Sheriff of Richland County on January 21, 1921, against Wm. W. Arthur and Anne Moore Arthur. And the original execution, which is an exhibit in this case, is marked lodged in the Sheriff's office January 22, 1921, and the following entry in pencil appears on the back of the execution: "1/22/21. No property other than homestead (signed by) W. W. Arthur." And the execution is marked returned to clerk *nulla bona,* T. A. Heise, S. R. C., January 22, 1921. On the 24th day of January, 1922, upon affidavit of counsel of M. De Veaux Moore, an order was made by W. H. Townsend, Judge of the Fifth Circuit, requiring W. W. Arthur and Anne Moore Arthur, defendants in said judgment, to appear before him at his chambers, on the 29th day of January, A. D. 1921, at 11 o'clock a. m., for examination in supplemental proceedings, and also providing "and in the meantime, and until the further orders of this Court you are restrained and enjoined from disposing of any property or rights which you have or own."

4. This affidavit and order appear to have been lodged in the Sheriff's office on the 24th day of January, 1921, and the affidavit of the deputy Sheriff, A. C. Palmer, appearing on the back thereof, and taken before W. H. Thompson, notary public, on the 25th day of January, 1921, states that it was personally served on Wm. W. Arthur and Anne Moore Arthur on the 24th day of January, 1921.

5. It is contended in behalf of the defendants herein that this record as to the date of service is erroneous, and that they sought to show by an affidavit of A. C. Palmer and by his deposition, taken at his home, because he was and is quite sick, and by the statement from the Weather Bureau as to the condition of the weather on Tuesday, the 25th day of January, 1921, that it was not served until Tuesday, the 25th, and after the time of the assignment hereinafter mentioned and referred to. This testimony of Mr. Palmer is exceedingly vague, doubtful, and uncertain. He seems to state that he served it only on Mr. Arthur at the time he served in the morning, and that he served on Mrs. Arthur a day or more previous thereto. Considering the length of time which has elapsed, and the evident uncertainty of the witness in his recent testimony, I am satisfied that the record, as made at the time, is the best evidence, and I find that this affidavit and order were served on the defendants, W. W. Arthur and Anne Moore Arthur, on the 24th day of January, 1921.

6. Pursuant to this order of Judge Townsend, the defendants, W. W. Arthur, and Anne Moore Arthur, were required to and did appear before Judge Townsend in supplemental proceedings, and he took quite a quantity of testimony from them and their witnesses, including Mr. F. H. Weston and Mr. W. T. Aycock, which testimony, by consent, has been offered and received in evidence in this case, and is submitted with this report.

During the supplemental proceedings a stipulation was entered into by Mr. M. De Veaux Moore, W. W. Arthur, Anne Moore Arthur, Weston & Aycock and H. N. Edmunds, attorneys for defendants, Purdy & Bland and D. W. Robinson, attorneys for plaintiffs in said cause, providing that the insurance moneys should be collected and held by R. O. Purdy and W. T. Aycock, and that the cotton or its proceeds, if sold, and that the same might be sold at such time as might be agreed by said Aycock and said Purdy,

should be held by the said Aycock and the said Purdy, in their joint names, and "that the ultimate disposition of the collections from said insurance policies, and of the proceeds from said cotton shall hereafter be determined by the Honorable W. H. Townsend, Circuit Judge, in this case (*M. De Veaux Moore v. W. W. Arthur and Anne Moore Arthur*), upon application or motion of either party hereto upon notice to the other."

Subsequent to this stipulation, on August 24, 1921, Judge Townsend, a motion and application having been made by attorneys for the plaintiff, for directions, as to the disposition of the insurance moneys and cotton, appointed W. B Marion receiver of the property of W. W. Arthur and Anne Moore Arthur, especially for the purpose of bringing this action, and to determine the disposition and application of the insurance money, and of the said cotton. This order of Judge Townsend is dated August 24, 1921, and the same, together with the stipulation, is appended hereto as part of the record. The statement filed by Mr. Aycock for himself and Mr. Purdy, which is attached to the exhibits herein, shows total amount of insurance collected $2,640.27, and that there was paid out of this attorney's fees to Mr. Aycock and Mr. Purdy for services in collecting $250, expenses of Weston & Aycock, $10, and reimbursement to D. W. Robinson for having advanced the premiums which were unpaid for this insurance, $157.24, leaving the net amount of insurance money in the hands of Purdy and Aycock $2,223.03.

7. The decree of Judge Bowman, setting aside, annulling and canceling the deed of conveyance (as well as the assignment of the bond and mortgage, and transfer of the furniture and silver) upon the ground that the same was fraudulent, null and void, was rendered on January 3, 1921, and the defendant, W. W. Arthur, who acted for himself and also for his wife and codefendant, Anne Moore Arthur, admits that he had notice and knowledge thereof the next

day after the rendition of the decree, and that on this day following the rendition of the decree, he told his wife of it and she executed a deed for some property at his suggestion on that day.

8. At the time said decree was rendered, the defendants W. W. Arthur and his wife, Anne Moore Arthur, were in possession of the tract of land which had been so fraudulently conveyed to Mrs. Arthur at Cane Savannah, and on this land was situated several buildings, one a store building and one a gin house with gin machinery. Insurance was being carried at that time in the name of Mrs. Anne Moore Arthur upon at least one of the buildings, upon the gin machinery, some cotton seed, and some fixtures in the storehouse. There was also an automobile there, at the time of the fire, hereinafter mentioned, in a shed adjacent to one of these buildings on this land. This automobile, Mrs. Arthur, from her testimony, seemed to think belonged to her, but Mr. Arthur stated it belonged to him, and the insurance policy was in his name on the same. The other insurance was in the name of Mrs. Arthur.

9. On the 19th day of January, 1921, the buildings, the cotton gin, the storehouse, fixtures and contents, and the automobile all burned. On the 22d day of January, as noted above, the execution was issued and served upon Mr. and Mrs. Arthur, and Mr. Arthur signed on the back of it the pencil notation quoted above. According to the testimony of W. W. Arthur and of Francis H. Weston, his uncle and attorney, on Sunday night, the '23d day of January, 1921, these two parties had a conference in regard to the disposition or assignment of these insurance policies. Mr. Arthur says it was then suggested and agreed that the insurance policies should be assigned for the purpose of paying attorneys' fees to Mr. Weston, Mr. Aycock, and Mr. Edmunds, and for the purpose of protecting Mrs. Amy S. Weston, the aunt of Mr. Arthur, on a bond which she had given, and which will be mentioned hereinbelow. Mr. Arthur says that

he had the conversation with and asked the advice of Mr. Aycock relative to the assignment of the policies on the day before they were assigned. Mr. Aycock's testimony does not corroborate or sustain this statement of Mr. Arthur's. On Monday, the 24th day of January, 1921, according to the testimony of Mr. Aycock, he prepared assignments of the insurance policies, the typewritten assignment was blank as to the name of the assignee, but this was filled in after conference with Mr. Weston, and Mr. Aycock took these assignments to the home of Mr. and Mrs. Arthur late in the afternoon of the 24th, at or about dark, and the assignments were then executed, transferring the policies to F. H. Weston. But the assignments themselves do not state how the proceeds were to be disposed of or the purpose of the assignment, simply stating they are for value. Two of the assignments are executed by the defendant, Anne Moore Arthur, and all of them are witnessed by Mr. Aycock.

Mrs. Anne Moore Arthur, upon her examination before Judge Townsend, which is the only testimony we have from her, had no recollection of having made any such assignment of insurance policies, in fact, stated that she had not assigned them, but I think undoubtedly she did execute the paper, though certainly she did not clearly understand or comprehend fully the purport and effect of her own act.

10. At the time these assignments were made the defendants, Mr. and Mrs. Arthur, owed, according to the testimony taken before Judge Townsend, more than $63,000 outside of the judgment in favor of Mr. De Veaux Moore, which, as stated above, was for over $24,000. Some of this indebtedness was partially secured, much of it not. Mr. Arthur stated on the back of the execution on Saturday, the 22d of January previous to the assignment, that he and his wife had no property subject to the execution, outside of homestead. Mr. Aycock, in his testimony before Judge Townsend, states that in his opinion there was no question but that the Arthurs were insolvent, if the suit of Mr. Moore

went against them, and it had been decided against them three weeks before the assignment, to the knowledge of Mr. and Mrs. Arthur, and of their attorneys. The testimony of Mr. Edmunds is practically to the same effect that Mr. and Mrs. Arthur were insolvent with this decree against them. And while a notice of intention to appeal seems to have been given, it was never perfected or pursued.

According to the evidence before me, the assignment of the insurance policies and the cotton constituted all of the visible assets and property outside of that which had been covered by specific liens to creditors, owned by Mr. and Mrs. Arthur.

Mr. Aycock testifies that, at the time the assignment was executed by Mrs. Arthur, she made the statement which struck him at the time as signficant and peculiar, which he narrates as follows: "I remember she used this rather peculiar expression, Well, she would much prefer that it should go in that way than to go to strangers, the strangers being her own blood and kin.

"Q. She meant in preference to her father, you mean? A. I suppose so.

Q. That is what you understood? A. That is what I understood, referring to them as strangers, because, I presume, of the lawsuit."

11. The two purposes for which the assignments were made were:

(1) To secure the attorney's fees to the attorneys for Mr. and Mrs. Arthur. The testimony as to this by Mr. Arthur is that the agreement was he was to pay $1,000 to Weston & Aycock for their services in the suit of Mr. Moore against them to and through the Circuit Court. Mr. Edmunds was also counsel, and there is no evidence as to a specific agreement or as to what fee he has charged or expected.

The services to and through the Circuit Court had been completed, certainly in the main, and practically all of the

fee, as conceded in the argument by Mr. Aycock, constituted past-due indebtedness at the time of the assignment of the insurance policies. The same counsel continued to appear for Mr. and Mrs. Arthur in the supplemental proceedings.

(2) To secure and protect Mrs. Amy S. Weston, who had, as surety, signed a bond for the Arthurs in October, 1920, in lieu of having a receiver appointed to take charge of the farm and collect and receive the crops and rentals of this farm. There is no claim that there was an agreement at the time she signed the bond that she should be protected on this contingent liability by the assignment of the proceeds of the insurance policies, and indeed it could not well be foreseen that the fires would have occurred at the time they did.

At the time of the assignment of the insurance policies this obligation to Mrs. Weston was certainly a past-due indebtedness, for with the decree signed and the property rightfully adjudged to belong to M. De Veaux Moore, on January 3d, all rights and liabilities under the bond had matured and accrued.

12. From the evidence I find that the assignments of the insurance policies to F. H. Weston by W. W. Arthur and his wife, Anne Moore Arthur, were made with the full purpose and intention and design on the part of the said Arthurs to hinder, delay, and defraud their creditors, especially to hinder, delay, and defraud M. De Veaux Moore and prevent him from collecting the judgment which he had obtained against them.

That at the time said assignments were made, said W. W. Arthur and Anne Moore Arthur were both utterly and hopelessly insolvent, were unable to pay their debts, and F. H. Weston and those for whom he took the said assignments, had such notice of his condition as to put them on knowledge as a matter of law of the same.

The said assignments, together with the transfer of the cotton, were in effect a transfer and assignment of all the property of the said Arthurs, and were made with the

fraudulent intent and purpose by them to prefer the defendants, F. H. Weston, W. T. Aycock, H. N. Edmunds, and Amy S. Weston, and in violation of the assignment laws of this State.

13. The next matter of fact pertains to the cotton. And it appears that the defendant W. W. Arthur in December, 1921, shipped and stored five bales of cotton and delivered the warehouse receipts for same to his uncle, Francis H. Weston. It is claimed that this cotton belongs to Mrs. Francis H. Weston to indemnify her on her bond. This was cotton, crops and rentals grown and received on and from the lands which the decree of Judge Bowman found belonged to M. De Veaux Moore, and it was rentals for which judgment is embraced in the decree of Judge Bowman, and for which Mr. Moore, under the law, would have been entitled to the regular rights and liens of landlord. Mr. Weston, in his testimony, states that he took this certificate for cotton and put it up as collateral security to a note at Carolina Bank upon which he was indorser, for Mr. Arthur, and he states that he does not recall Mr. Arthur having given that certificate to apply specifically to the protection of his wife.

Mr. Arthur testified, on February 3, 1921, before Judge Townsend, that he had shipped four bales to himself, one bale to Mr. Aycock, and the certificates or warehouse receipts for the same were turned over to Mr. Aycock; that the four bales were shipped some time in January, and one bale a few days before his testimony; that he turned these certificates over to Mr. Aycock, "To hold for the people who signed the bond for the place down there," and "that bond had been signed several months ago;" that, of this five bales of cotton, some of it was shipped before he was served with notice to appear before Judge Townsend, and part afterwards. He says four bales afterwards, and one before, and then he reverses that. Mr. Aycock's statement, in his testimony as to the liability and relationship of Mrs. Weston on the bond, given in October, is: "As I construed the order,

Mrs. Weston would be relieved upon turning over to the proper custodian the cotton or other agricultural produce that might be harvested on the place after the order had been signed." The witness (Arthur) states, that there was still some cotton which he was to have sent up there. Of this we have no other information.

14. I am satisfied and find from the evidence that the purpose and intention of the defendants, W. W. Arthur and Anne Moore Arthur, in shipping and transferring this cotton, was to hinder, delay, and defraud his creditors, in the collection of their debts, especially to defraud M. De Veaux Moore, father-in-law of Mr. Arthur, and father of Mrs. Arthur; and also that such assignments and transfers of the cotton were made in fraud of the assignment laws, and with the fraudulent intent and purpose of preferring said Weston & Aycock, H. N. Edmunds, and Mrs. Amy Weston some or all over the said M. De Veaux Moore.

## CONCLUSIONS OF LAW

15. I conclude that the assignments of the insurance policies or proceeds thereof are fraudulent, null, and void. *Porter v. Stricker,* 44 S. C., 192, 194; 21 S. E., 635. *Anderson Hdwe Co. v. Gray,* 94 S. C., 80; 77 S. E., 742. *Avery v. Wilson,* 47 S. C., 89, 90, 99, 100; 25 S. E., 286. *Marsh v. Ramsay,* 57 S. C., 124, 125; 35 S. E., 433.

16. That the attempted assignments and transfers of the cotton itself is fraudulent, null, and void. That this cotton equitably and rightfully belongs to the plaintiff, M. De Veaux Moore, as he was the rightful owner of the land, and entitled to the rents and profits thereof, during the year 1920, and furthermore, under the terms of the bond and liability of Mrs. Weston, as construed by Mr. Aycock, her attorney, this cotton equitably and rightfully belongs to Mr. Moore, and to his receiver, W. B. Marion, in this cause. Mrs. Weston will have a right, in my opinion, to credit on any liability which she may have incurred on said bond, for the

value of this cotton, if and when her rights are fixed in this regard.

17. I further conclude that the plaintiff, M. De Veaux Moore, in the main action, W. B. Marion, receiver, in the supplemental proceedings, are entitled to have the proceeds of the insurance money and the cotton, and they have a first right and lien thereon, by reason of their diligence in prosecuting these proceedings. *Ryttenberg v. Keels,* 39 S. C., 213; 17 S. E., 441. *Avery v. Wilson,* 47 S. C., 90; 25 S. E., 286. *Freedman's Sav. Bk. & Trust Co. v. Earle,* 110 U. S., 716; 4 Sup. Ct., 226; 28 L. Ed., 303.

18. I recommend that judgment be entered herein setting aside and annulling the attempted assignments and transfers of the insurance policies hereinabove mentioned and referred to, and requiring W. T. Aycock and R. O. Purdy, who hold the proceeds thereof under a stipulation filed in this cause, to account for and turn over such proceeds to the plaintiff, W. B. Marion, receiver; that the attempted transfer of the cotton by said W. W. Arthur to F. H. Weston and W. T. Aycock, be declared null and void, and that they be required to turn over and deliver said cotton to W. B. Marion, receiver, in this cause, to be used and applied by him under the directions of the Court to the payment of and on the judgment of M. De Veaux Moore against W. W. Arthur and Anne Moore Arthur.

The order and decree of T. J. Mauldin, Judge of the Court of Common Pleas, follows:

This matter came on to be heard before me at the fall term of Court for Richland County, on exceptions to the Master's report, taken and filed by the defendants. The action grows out of a case entitled *M. De Veaux Moore, Plaintiff, v. W. W. Arthur, Anne Moore Arthur et al., Defendants,* wherein the plaintiff, Moore, alleged in his complaint that certain transfers of real and personal property, made by him to the defendant, Anne Moore Arthur, had been secured through undue influence and fraud practiced

upon him by the same; Anne Moore Arthur being his daughter, and W. W. Arthur being her husband. A short summary of the original case is necessary to fully understand the case before me.

M. De Veaux Moore owned a life estate in the tract of land at Cane Savannah, County of Sumter, the remainder being owned by his five children in equal shares and as tenants in common. Mr. Moore's wife having died, he removed to Columbia and resided with his daughter and son-in-law, Mr. and Mrs. Arthur. While residing with them he conveyed to Mrs. Arthur his life estate in the Cane Savannah place and also transferred to her certain silverware and household furniture and a bond and mortgage which he owned. The consideration for these transfers was the promise of Mr. and Mrs. Arthur to support and maintain Mr. Moore throughout life. Possession was transferred in pursuance of the tranfers referred to, and the Cane Savannah place was cultivated by Mr. and Mrs. Arthur. The bond and mortgage were sold and the proceeds used in part for paying obligations of Mr. Moore; the balance being lost in a business venture undertaken by Mr. Arthur.

The cordiality of the relations that had existed for several years being disturbed, the original suit referred to was commenced by Mr. Moore, to set aside the transfers mentioned.

The defendants answered, denying that any improper influence had been practiced upon him, and asserting that they were still ready and willing to perform their agreement, but that he had of his own volition left their home. The issues were referred to a Referee, who took the testimony and made his report, in which he found that the transfers mentioned had been procured under the circumstances alleged in the complaint, recommending that the same be declared null and void, and that judgment be entered up against Mr. and Mrs. Arthur.

On the filing of this report plaintiff's attorneys moved for the appointment of a receiver for the Cane Savannah

place. The motion was heard by Hon. I. W. Bowman, who passed an order granting the motion unless Mr. and Mrs. Arthur filed a proper bond as provided for in subdivision 8, § 303, Code of Cicil Procedure, 1912. This bond was duly furnished; the surety being Mrs. Amy S. Weston, one of the defendants in the case before me. At the time Mrs. Weston signed this bond it was agreed between the defendants Arthur and herself that all agricultural produce on the premises gathered after the date of the said order, to wit, October 2, 1920, should be delivered by said Arthurs to her, or her agent, for the purpose of protecting her against the liability on said bond.

Exceptions were duly taken to the Referee's report, which were heard by Judge Bowman, who passed an order thereon confirming the report and ordering judgment against Mr. and Mrs. Arthur in the sum of approximately $24,000. This order was dated January 3, 1921. Notice of appeal was served but never perfected.

On the night of January 19, 1921, a fire destroyed certain buildings on the Cane Savannah place, the stock of goods and fixtures in the store building thereon, a gin house and machinery, and other personal property, including a Packard automobile. Insurance had been effected on the building, stock of goods, and fixtures, gin house and machinery and contents in the name of Mrs. Arthur, and as her property. Insurance on the automobile had been effected in the name of Mr. Arthur and as his property.

Three days after the fire, to wit, January 22, 1921, execution was presented to Mr. Arthur at his home in the City of Columbia, but no levy was made thereunder. On the following day, at a conference held between Mr. Arthur and Mr. Francis H. Weston, one of his attorneys, it was agreed that the proceeds of the insurance policies should be assigned for the purpose of securing Messrs. Weston & Aycock and H. N. Edmunds, Esq., for the balance due them for services as attorneys, and also to protect Mrs. Amy S. Weston against

liability on the bond she had executed as surety to avoid a receivership, as above stated. The insurance policies were three in number; one of them insured the automobile; a second insured the stock of goods and fixtures in the store; and the third insured the buildings and the machinery—together with some cotton seed in the gin house, the last named being insured in Peninsular Fire Insurance Company of America. The assignments were duly executed unto Francis H. Weston, as assignee, on the 24th day of January, 1921. In the meantime supplementary proceedings had been commenced and by an order dated January 24, 1921, Mr. and Mrs. Arthur were restrained and enjoined by Hon. W. H. Townsend, Circuit Judge, from disposing of any of their property, and required to appear before him for examination at a date fixed in said order. The examination of the defendants Mr. and Mrs Arthur was duly made, and at said hearing the circumstances attending the execution of the assignments of the insurance policies were fully gone into. The assignments were prepared by and executed in the presence of W. T. Aycock, Esq., one of the defendants' attorneys, who fully explained the same to them, and who attested and subscribed the same. A compromise adjustment of the insurance policies was made, and under an agreement between the parties the fund was deposited in the bank to the joint credit of W. T. Aycock and R. O. Purdy, subject to the determination of the rights of the parties by the Courts. The amount now on hand is $2,223.03.

W. B. Marion, the plaintiff herein, was duly appointed receiver, and he has brought the action before me for the purpose of setting aside the insurance assignments, and also to set aside the transfer of certain cotton made by Mr. and Mrs. Arthur to protect Mrs. Weston on the bond above mentioned. The issues were referred to J. C. Townsend, Master for Richland County, who has taken the testimony and made his report wherein he finds that the proceeds of the insurance policies and the cotton mentioned were assigned

by Mr. and Mrs. Arthur in fraud of creditors, recommending that they should be set aside and canceled. Exceptions to the said report have been filed by the defendants Francis H. Weston, W. T. Aycock, and H. N. Edmunds, and Mrs. Amy S. Weston. The matter has been fully argued before me, and I am clearly of the opinion that the Master's report should be reversed.

The complaint in the case at bar charges that the assignments of the insurance policies and the cotton are null and void, because it is argued that they are violative of the Statute of Elizabeth (§3455, Vol. I, Civil Code 1912), and also because they are fraudulent against creditors under the assignment law (Section 3723 et seq.). With regard to the Statute of Elizabeth, it is necessary for the plaintiff to show either (1) that there was no consideration for the assignments; or (2) that both parties participated in the fraud.

The evidence taken shows clearly that the assignments were based upon a bona fide consideration. It is true that no present consideration passed, but the Statute of Elizabeth is fully satisfied by a bona fide consideration, even though it be past. Lenhardt v. Ponder, 64 S. C., 354; 42 S. E., 169, and cases cited therein. The promise to pay attorney's fees and the rendition of service thereunder are not disputed. The promise to protect Mrs. Weston was made before she went on the bond referred to and was a valid, binding, and bona fide consideration for the assignment and delivery of the cotton to her. Lenhardt v. Ponder, supra.

With regard to the alternative requirement that both parties must participate in the fraud, it is only necessary to say that the Master's report did not find that the assignee or the parties for whom the assignments were made were guilty of or participated in any fraud whatsoever. There is no evidence of fraud on the part of the beneficiaries of these assignments. They did only what they had a right

to do, to wit, get security for their obligation if they could. They merely asserted their own rights in the matter, and there is a complete failure of evidence to show that they had any design to practice fraud upon the other creditors of the said Arthur.

The well-settled rule in South Carolina is, in order to establish that an assignment or mortgage of property by a debtor to secure a creditor was made with the design to commit a fraud upon his other creditors, in violation of the Assignment Act, that such fraudulent purpose must be proven; it being a question of intention. *Porter v. Stricker,* 44 S. C., 183; 21 S. E., 635.

The rules laid down in that case are: (1) An insolvent debtor may, by a *bona fide* mortgage, which is intended merely as security for a just debt, prefer one of his creditors. (2) If the mortgage is really designed to operate not as a security merely, but as a means of transferring the debtor's property to the favored creditor, in preference to the other creditors, then it is void under the assignment law. (3) The question as to what was the intention is a question of fact.

The assignments herein referred to were executed *bona fide* and intended merely as security for a just debt. They were not designed to operate as a means of transferring the debtor's property to favored creditors, and there was no intention on the part of Mr. and Mrs. Arthur to commit a fraud upon their other creditors. The consideration was *bona fide,* and the assignments were designed to secure just and honest debts. It is inevitable that in every case where a debtor executes a mortgage to secure one of his creditors, other creditors are to that extent excluded from participating in his estate, but, so long as the intent to commit a fraudulen preference is absent, the creditor obtaining the security will be protected. *Lenhardt v. Ponder, supra; Porter v. Stricker, supra.*

But it is further contended by the plaintiffs that at the time when the insurance assignments were executed an injunction order had been made by Judge Townsend restraining and enjoining them from disposing of any portion of their estate.    Some controversy arises·as to the time when the said order was served.    The beneficiaries of the assignments when made had no knowledge of the order of injunction.    The return of the officer who served the paper was sworn to by him on the 25th of January, but the body of the return declares that it was served on the 24th.    The circumstances attending the service as well as the officer's testimony that he signed the return the day he had served the paper satisfied me that the order was not served until the 25th of January, the day after the insurance assignments had been made.    Authorities were cited to show that the return of an officer cannot be corrected in this manner, but it should be noted that the return was introduced in evidence, and the defendant Arthur questioned regarding the same by the plaintiff, and the issues thus raised.    The question being before the Court, defendants were entitled to meet it without being required to resort to a separate proceeding outside of the action in which the action was raised.

As to the assignment of the cotton, the agreement to pledge the same was entered into before Judge Bowman had confirmed the Referee's judgment in favor of the plaintiff, and the cotton was delivered in pursuance of the said agreement.    There is no evidence whatever as to fraud in connection with the assignment of the cotton, and it was in no manner concerned or connected with the assignment of the insurance policies.

It was admitted during the argument, and to be considered as a part of the record, that an action has been commenced and is now pending by the Carolina National Bank of Columbia, claiming the cotton assigned as hereinabove referred to for the protection of Mrs. Weston against liability on the said bond.    This action is based on an alleged

chattel mortgage executed in the early part of the year 1920. If said mortgage entitled the Carolina National Bank to the said cotton, neither Mrs. Weston nor the plaintiff Moore can take the same. The Carolina National Bank not being a party to this action, it is not proper for me to determine the ownership of the cotton. The right to the cotton is therefore not passed on in these proceedings at this time, and is to be determined with the proper parties before the Court under proper proceedings.

It is, therefore, ordered, adjudged, and decreed:

1. That the exceptions be sustained and the Master's report be reversed, except as herein appears, and that the assignments of the insurance policies mentioned are valid and free of fraud on the part of any of the parties thereto, and based on lawful consideration; that the assignments and transfers of the cotton referred to and held by W. T. Aycock and Francis H. Weston are valid, free of fraud on the part of any of the parties thereto, and based on lawful consideration.

2. That out of the proceeds of the insurance policies held by R. O. Purdy and W. T. Aycock, the same shall forthwith pay to Weston & Aycock the amount due them on the attorneys' fees due and payable to them by said W. W. Arthur and Anne Moore Arthur, to wit, $650.

3. That said R. O. Purdy and W. T. Aycock hold the balance of said fund subject to the further order of this Court, and on the terms and conditions of the agreement whereby said fund was placed in their hands herein referred to.

4. That it be referred to the Master for Richland County, State aforesaid, to take the testimony offered as to a reasonable fee to be paid H. N. Edmunds, Esq., for his services in representing said W. W. Arthur and Anne Moore Arthur in the action referred to, to wit, *M. De Veaux Moore v. W. W. Arthur et al.*, and report the same to this Court with his findings thereon.

5. That the determination of the rights to and the ownership of the cotton held by the defendants W. T. Aycock and Francis H. Weston be withheld until all parties claiming an interest therein be brought before the Court, and that in the meantime the same be held under the agreement heretofore entered into between the parties hereto.

. 6. That the parties have leave to apply at the foot of this decree for any further relief to which they may be entitled.

*Messrs. Purdy & Bland* and *D. W. Robinson,* for appellant, cite: *Preferential assignment by insolvent debtor void:* 1 Civ. Code 1912, Sec. 3732; 32 S. C., 494; 22 S. C., 111; 38 S. C., 281; 44 S. C., 190; 23 S. C., 401; 40 S. C., 9; 47 S. C., 89. *Where intent of creditor or grantee is material:* 64 S. C., 362; 46 S. C., 166; 55 S. C., 203; 1 Civ. Code 1912, Sec. 3733; 105 S. C., 10; 108 S. C., 511; 109 S. C., 280. *Other transactions admissible to show intention to defraud:* 64 S. C., 69; 64 U. S., 186. *Person charged with notice of facts after being put on inquiry:* 111 S. C., 330; 106 S. C., 322; 69 S. E., 636; 64 S. E., 902; 67 S. E., 328; 108 S. E., 895; 94 S. E., 916; 3 Rich. Eq., 41; 1 McC., 231; 2 Pom. Eq. Jur. Sec. 607. *Notice to assignees:* 109 S. E., 21. *Past due indebtedness will not make assignee purchaser for value without notice:* 57 S. C., 124; 26 S. C., 506; 5 S. C., 96; Spears Eq., 542; 1 Strob. Eq., 113; 38 S. C., 148; 2 Pom. Eq. Sec. 747, 748, 749; 1 A. L. R., 986; 3 Strob. Eq., 134; 113 S. E., 299. *Assignee takes title of assignee in same plight:* 51 S. C., 443; 3 McC., 63; 60 S. C., 222; 38 S. C., 152. *Attorney cannot be bona fide purchaser from client pendente lite:* 3 A. & E. Enc. L. (2nd Ed.), 321; 106 U. S., 697; 2 Pom. Eq. Sec. 666; Thornton Attorneys, Sec. 151; 143 Ill. App., 148. *Assignment void:* 47 S. C., 100; 94 S. C., 84; 2 Bail., 328; 4 S. C., 257; Kerr Fraud, 199 1 Hill., 380; 1 McC., 227. *Plaintiff by diligence entitled to preference:* 39 S. C., 213; 47 S. C., 90; 110 U. S., 716; 20 S. C., 493.

*To set aside return of service evidence must be clear and unequivocal:* 104 S. E., 763; 93 S. E., 435; 21 R. C. L., 1321; 72 S. E., 156; 39 S. C., 480. *Fraud:* 66 L. R. A., 426.

*Messrs. Weston & Aycock* and *H. N. Edmunds,* for respondents, cite : *Assignment not void as against judgment creditor:* 6 Rich., 437; 2 Strob. Eq., 285; 19 S. C., 216; 23 Cyc., 1368, 1377, 1383; 2 Hill. Eq., 219; 1 McC. Eq., 107; 64 S. C., 354. *Antecedent indebtedness good consideration:* 64 S. C., 354; 27 S. C., 286; 56 S. C., 154; 44 S. C., 183; 53 S. C., 546. *Assignment not void under assignment act:* 32 S. C., 492; 26 S. C., 248; 44 S. C., 183. *Insurance policies choses in action and not subject to levy:* 3 Hill. L., 171; 126 Tenn., 435; Ann. Cas., 1913-E, 197; 21 Ann. Cas., 743; 24 S. C., 390; 3 Ann. Cas., 476.

October 29, 1923.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a decree of his Honor, sustaining the exceptions to the report of J. C. Townsend, Master for Richland County.

Both the report of the Master and decree of Judge Mauldin give a full history of the case and will be reported.

The exceptions, 29 in number, challenge all of the findings of his Honor, both as to facts and his conclusions of law. Appellants before us concede that, since the decree of Judge Mauldin, the warehouse receipts for the ten bales of cotton, mentioned and referred to in the pleadings, and in the exceptions, have been turned over to the attorneys of Moore, in satisfaction and release of the liability of Mrs. Weston, as surety on the bond given in October, 1920, in lieu of receivership, and this renders unnecessary a consideration of exceptions 39, 14, 22, 23, and 27, and except in so far as the dealings of W. W. Arthur, in reference to the cotton, throw light on his purpose and intent in reference to the assignment

of the insurance policies, we do not intend to take up the exceptions one by one.

Exceptions 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 24, 25, 26, 28, and 29 raise the question that the assignment was preferential and fraudulent. All of these questions involve the question of the *bona fides* or *mala fides* of the assignment of the insurance policies.

Master Townsend, who took the testimony and heard the witnesses, found all of the facts against the validity of the assignment, finding that the assignments of the insurance policies were made with the intent to defraud on the part of the Arthurs; also that there was sufficient evidence to put the assignees on notice.

Judge Mauldin reversed the Master on all of his essential findings.

The statute of the State renders any assignment by an insolvent debtor of his or her property for the benefit of his or her creditors, in which any preference or priority is given, other than the same be distributed among all creditors of said insolvent equally, absolutely null and void and of no effect whatsoever.

I tried the case of *Porter v. Stricker,* 44 S. C., 190; 21 S. E., 635; in 1894, at Chester. Judge Gage was a practicing attorney at that time, and I decided the case under what I conceive to be the law as decided by the Supreme Court in *Mitchell v. Mitchell,* 42 S. C., 475; 20 S. E., 405. *Mann v. Poole,* 40 S. C., 1; 18 S. E., 145, 889. An appeal was taken, and my decree was reversed in an opinion which clarified the law and explained some misleading expressions, which arose in these two cases, and cases prior to the decisions previous to *Porter v. Stricker,* 44 S. C., 190; 21 S. E., 635, under this Assignment Act.

The rule laid down in *Porter v. Stricker, supra,* in reviewing previous decisions is:

"In the light of our decisions, whenever it becomes necessary to canvass the transactions of insolvent debtors with

their creditors, who are preferred by receiving a lien upon such insolvent debtor's property to the exclusion of all other creditors, so as to determine whether such preferences are obnoxious to the provisions of Chapter 72 of our General Statutes, the crucial test is this: Was it the intention of the insolvent debtor to honestly secure the debt of one or more of his creditors, by giving a judgment, or a mortgage, or an assignment of certain choses in action, or was it his purpose thereby to give one or more of his creditors a preference over other creditors? Thus the intention of the insolvent debtor must be ascertained, and this presents a question of fact. * * *

"From this review of the cases upon the subject in this State, the following propositions, applicable to the case under consideration, are clearly deducible: (1) That an insolvent debtor may, by a *bona fide* mortgage, which is intended merely as a security for a just debt, prefer one of his credi-·tors. (2) That if the mortgage is really designed to operate, not as a security merely, but as a means of transferring the debtor's property to the favored creditor, in preference of the other creditors, then it is void under the assignment law. (3) That the question as to what was the intention is a question of fact."

It will be seen that it is the intention of the debtor, not the creditors or assignees, which determines the *bona fides* or *mala fides* of the assignment. A careful consideration of all the evidence convinces us that in making the assignment the assignment was made for the purpose thereby to prefer the respondents, and the Master was correct in his finding that the assignment was null and void Under the decisions of this Court in a number of cases the invalidity of such assignment as contemplated in said Statute does not depend upon the fact whether or not the preferred creditor has knowledge of the fraudulent intent of the debtor. The Statute declares the assignment inoperative, and that is its character, regardless of the *bona* or *mala fides* of the pre-

ferred creditors.   *Putney v. Friesleben,* 32 S. C., 494; 11
S. E., 337.   *Austin-Nichols & Co. v. Morris,* 23 S. C., 401
*Porter v. Stricker,* 44 S. C., 190; 21 S. E., 635.   *Avery v.
Wilson,* 47 S. C., 89; 25 S. E., 286.

These exceptions are sustained.   We deem it unnecessary
to consider all of the exceptions at length, as we are of the
opinion on the whole case that the Master was correct in his
conclusions and Judge Mauldin wrong, that Judge Mauldin's
decree is reversed, and the Master's report is the judgment of
this Court.

In reversing the decree of Judge Mauldin it must be
understood, in so far as it effects Weston, Aycock and Ed-
munds, that it is done under the Assignment Act.

Judgment reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN
concur.

MESSRS. JUSTICES FRASER and MARION disqualified.