## WILKS v. WALKER.

1. The manifest object of section 2014 of the general statutes is to pre-vent an insolvent debtor from transferring or assigning his property for the benefit of one or more creditors to the exclusion of others, and whether this object is sought to be effected by a formal deed of assignment or in any other mode, can make no difference.

2. Where an insolvent debtor transfers all of his property to one creditor by means of a chattel mortgage and, at a later date, by a bill of sale and a deed of conveyance, all under a design originally determined on by himself and the favored creditor, for the benefit of such creditor and another, to the exclusion of all other creditors, the transaction is void because in violation of the statute that prohibits assignments for the benefit of creditors from giving preferences.

Mr. Chief Justice Simpson *dissenting.*

Before FRASER, J., Chester, October, 1883.

The opinion sufficiently states the case. The appeal was taken upon the following exceptions:

1. Because his honor ruled and decided that the following question propounded by the attorney for the defendants to Addison F. Kitchens, a witness for the plaintiff, on cross-examination, to wit: What property did you own on the 5th day of October, 1882? was incompetent and irrelevant.

2. Because his honor refused to allow or require the said witness to answer the said question.

*Messrs. Patterson & Gaston,* for appellants, cited *General Statutes,* ch. 72, §§ 2014–16; 1 *McCord Ch.,* 441; *Bump Fr. Conv.,* 355–6; *Burr. Ass.,* 495–500; 30 *Ala.,* 199; 22 *Pick.,* 269; 8 *Iowa,* 96; 42 *Me.,* 445; 12 *S. C.,* 5; 13 *Id.,* 368; 22 *Pick.,* 275.

*Mr. John M. McNeel,* contra.

At common law, a debtor may prefer one creditor to another. 1 *McCord Ch.,* 441, 475; 1 *Bail.,* 571; *Rice Ch.,* 7, 300; 2 *Hill Ch.,* 444; 2 *S. C.,* 354. This right has been taken away only where there is an assignment for the benefit of creditors generally. An assignment is a transfer in trust to pay creditors;

a formal paper with certain essential parts. *Dudley*, 51.. The papers in question here are not such an assignment. *Bump Fr. Conv.*, 330; 10 *Paige*, 445; 1 *Coms.*, 201; 3 *Sumn.*, 345; 4 *Watts & S.*, 383; 7 *Id.*, 335; 23 *Pick.*, 446; 13 *N. H.*, 298; 10 *Conn.*, 280; 26 *Vt.*, 686; 18 *Ga.*, 668; 2 *Metc.*, 99; 3 *S. C.*, 266. This action has nothing to do with the land of Kitchens, and these several papers cannot be construed together. If they were, the statute makes void assignments *giving preferences*, that is, where the deed of assignment by its own terms declares a preference. Whatever the law ought to be, this case is not reached by the law as it is. The court can only say, *ita lex scripta est;* and should carefully avoid the evils of judicial legislation.

January 6, 1885. The opinion of the court was delivered by

MR. JUSTICE McIVER. On October 5, 1882, one A. F. Kitchens, being indebted to the plaintiff in the sum of fifteen hundred and forty-three dollars, a large portion of which had been antecedently contracted, executed a mortgage on sundry articles of personal property, including the cotton which is the subject matter of the present controversy, to secure the payment of said debt on or before the first day of January, 1883. On February 10, 1883, the said Kitchens, in consideration of said indebtedness, and of a credit of fourteen hundred and ninety-eight dollars on the mortgage debt, executed a bill of sale for the property mentioned in the mortgage to the plaintiff—all of the cotton having been ginned and packed in bales, except so much thereof as was estimated to be sufficient to pay certain agricultural liens held by Barber & Drennan, the payment of which was assumed by the plaintiff. On or about February 23, 1883, the said cotton was seized by the defendant Walker as sheriff under a warrant of attachment issued by the defendants, Cousar & Son, against the said Kitchens, and upon repeated demands made therefor by the plaintiff he refused to deliver it up to the plaintiff. On April 5, 1883, the said sheriff levied upon the cotton under an execution obtained in the case in which the above mentioned warrant had been issued, and a bond of indemnity having been executed to him by Cousar & Son, with the de-

fendant, Allen Beard, as surety, he sold the same to Cousar & Son, they being the highest bidders therefor. Whereupon this action was brought to recover the value of the said cotton.

The defendants, in their answer, allege that on October 5, 1882, the said Kitchens was insolvent, and that plaintiff had good reason to believe that he was so, and that the transfers of property above mentioned embraced all of the personal property of the said Kitchens subject to execution : and that on the same day the said Kitchens conveyed to the plaintiff all his real estate subject to execution, in consideration that the plaintiff would pay an antecedent debt due to the estate of Robert Patterson by the said Kitchens, and they therefore claim that these transactions between the plaintiff and Kitchens were in violation of section 2014 of the general statutes and therefore void.

At the trial, defendant's counsel proposed to ask Kitchens, while on the stand as a witness, the following question : "What property did you own on the 5th day of October, 1882?" which, upon objection being interposed by the counsel for plaintiff, "the presiding judge stated that he would have preferred to meet the question on a demurrer to the answer, but thought he ought to meet it in the shape he found it; that he thought the answer, if made out by the testimony, was no valid defence to the plaintiff's case, and that he would treat the matter in the same way he would have done if there had been a demurrer to the answer, for want of facts sufficient to prove a defence. The point to which the question was directed, and it was so conceded, was to establish the facts set out in paragraph VII. of the answer, which transactions it was claimed constituted such an assignment as was contrary to the provisions of chapter LXXII., section 2014, of the general statutes of this state, and therefore void."

The Circuit judge ruled that the said question was incompetent and irrelevant under the pleadings, and refused to allow or require the witness to answer the question. After this ruling, the defendants, of course, offered no further testimony, and the plaintiff had a verdict. The sole question, therefore, raised by this appeal is as to the correctness of this ruling.

Treating the question as if it arose upon a demurrer to the answer, that being the way in which it was considered by the

Circuit judge, and should be by us, all of the material allegations of the answer must be taken to be true. It is there alleged that at the time of the transactions between the plaintiff and Kitchens the latter was insolvent and the former had good reason to know that fact, and that these transactions "were had and made in pursuance of an original design and intent of the said Addison F. Kitchens and John W. Wilks, determined on by them in the beginning, to transfer and assign all the property of Addison F. Kitchens, subject to execution for debt, to John W. Wilks, for the benefit of the said John W. Wilks and the estate of Robert Patterson, to the exclusion of all the other creditors of the said Addison F. Kitchens."

Assuming these allegations to be true, they amount to an admission that Kitchens and Wilks intended to effect the precise object which is declared to be illegal and absolutely null and void by section 2014 of the general statutes, which reads as follows: "Any assignment by an insolvent debtor of his or her property, for the benefit of his or her creditors, in which any preference or priority is given to any creditor or creditors of the said debtor by the terms of the said assignment over any other creditor or creditors, other than as to debts due to the public, or in which any provision or disposition of the property so assigned is made or directed, other than that the same be distributed among all creditors of the said insolvent debtor equally, in proportion to the amount of their several demands, and without preference or priority of any kind whatsoever, save only as to debts due to the public, and save only as to such creditors as may accept the terms of such assignment and execute a release of their claim against the debtor, and except as hereinafter provided, such assignment shall be absolutely null and void and of no effect whatsoever."

The manifest object of the act is to prevent an insolvent debtor from transferring or assigning his property for the benefit of one or more of his creditors to the exclusion of all others; and whether this object is sought to be effected by a *formal* deed of assignment, or in any other mode, can make no difference. Any other view, it seems to us, would sacrifice substance to mere form, and enable insolvent debtors, by evasion, to effect a pur-

pose declared by statute to be unlawful. The statute is a remedial one, and should be so construed as to suppress the mischief which it was manifestly designed to prevent. It being conceded, as we have seen, that the object of Kitchens and Wilks was, by the means of the papers above referred to, determined on in the outset, to effect an assignment of the property of A. F. Kitchens, who was then insolvent, for the benefit of Wilks and the estate of Patterson, to the exclusion of all the other creditors of Kitchens, the transaction was in violation of the statute, and therefore void.

The judgment of this court is that the judgment of the Circuit Court be reversed and that the case be remanded to that court for a new trial.

Mr. Justice McGowan. I concur upon the additional ground that the conveyance of the land to Wilks, in consideration that he would pay the donor's debt to the Patterson estate, was substantially "an assignment" for the payment of that debt. It has none of the characteristics of a sale pure and simple, but rather of an assignment, in which priority was given to a certain creditor, to the exclusion of all others. It seems to me that if parties could escape the consequences of this just provision of the law, simply by avoiding the use of the word "assignment," the act would soon become a dead letter.

Mr. Chief Justice Simpson, *dissenting.* One A. F. Kitchens, an insolvent debtor, being indebted, among others, to the plaintiff, for the purpose of securing said indebtedness, on October 5, 1882, executed and delivered to the plaintiff a paper styled in the complaint a chattel mortgage, conveying to the plaintiff a considerable quantity of personal property—in fact, as is stated, all that Kitchens possessed. This mortgage was regularly recorded, and was executed upon the condition "that if the sum of $1,543, the amount of plaintiff's claim, was not paid by the 1st day of January, 1883, with the interest thereon, then the said plaintiff was empowered to sell the property, or so much thereof as might be necessary to satisfy said indebtedness." On the same day the said Kitchens conveyed to the plaintiff certain real

property, all that he owned, subject to execution for debt, in consideration of thirty-five bales of cotton to be delivered by the plaintiff to the estate of one Robert Patterson, another creditor of Kitchens.

On February 10, 1883, the mortgage debt secured by the chattel mortgage above mentioned, not having been paid, in consideration thereof, and further, the plaintiff having agreed to credit said indebtedness with $1,498.99, Kitchens transferred by bill of sale to the plaintiff the greater part of the property embraced and described in said mortgage, including among other articles a considerable quantity of cotton, some twenty-five bales, then on the railroad platform at Richburg, in said county.

On April 5, 1883, the defendants, Cousar & Son, having obtained a judgment against Kitchens, and having executed an indemnity bond to the sheriff, with the defendant Leard as surety thereto, caused this cotton to be levied and afterwards sold in satisfaction of said judgment, Cousar & Son being the highest bidders, at 9⅝ per pound, the whole purchase amounting to $1,071.45—no part of which was paid to the plaintiff. Under this state of facts, the action below was commenced, the plaintiff having demanded possession of the sheriff more than once before the cotton was sold. In the complaint plaintiff prayed judgment for the sum of $1,071.45, with interest from the day of sale and costs.

The defendants alleged in their answer that Kitchens was insolvent at the time the papers above referred to were executed, and that such being the fact the said papers, covering as they did the entire property, both real and personal, of Kitchens, and making provision for the payment of a debt to the estate of Patterson, another creditor of Kitchens, on the delivery of twenty-five bales of cotton to said estate by the plaintiff, were executed in fraud of chapter 72 of the general statutes in reference to assignments for the benefit of creditors, and therefore void.

At the trial the defendants (endeavoring to sustain the allegations in the answer, *i. e.*, that Kitchens had embraced all of his property in the conveyances to the plaintiff), when Kitchens was on the stand as a witness, propounded to him the following question, *i. e.*, "What property did you own on the 5th of October,

1882 ?" Upon objection, this question was ruled incompetent and irrelevant under the pleadings, the Circuit judge holding that, admitting the truth of the allegations interposed in the defence, yet they would constitute a legal defence, as the transactions therein charged, even if true, were not violative of chapter 72 of the general statutes. Upon this ruling, no further evidence was offered, and a verdict was rendered for the plaintiff for the sum of $899.98. The appeal assigns error to this ruling.

The sole question, therefore, before us is, Do the facts of the case, as herein above stated, bring the case under the provisions of chapter 72 of the general statutes ? If so, the appeal must be sustained, otherwise the judgment below must be affirmed. We will confine ourselves to this question, anything further would be *obiter* and misleading.

Chapter 72 of the general statutes contains twelve sections, and it is entitled "Of assignments for the benefit of creditors." The most important sections, and the only ones necessary to be considered here, are sections 2014 and 2015. Section 2014 imperatively forbids an insolvent debtor from giving a preference to any one creditor over another in any *assignment* made for the benefit of creditors, except to the public, and to such creditors as may release their claims upon accepting the terms of the assignment ; and it declares that any *assignment* executed by an insolvent debtor, with a preference other than as stated, shall be absolutely null and void. Section 2015 provides that if any insolvent person shall, within ninety days before the execution of an *assignment* for the benefit of creditors, prefer one debtor, by procuring or suffering any part of his property to be attached, sequestered, or seized in execution in his behalf, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, &c., &c., the person securing such payment, pledge, &c., having cause to believe that such debtor is insolvent, the same shall be void ; and the assignee may recover the said property, or the value of it, from the person so benefited.

It is hardly necessary to refer to authorities for the position that a debtor, as a general rule, may pay one creditor in advance and in preference of another. Nor can it be denied that he can sell and transfer his property, in part or in whole, as he may

desire, without consulting, and even in defiance of, his creditors, provided the transaction is based upon a sufficient consideration and is *bona fide.* This acknowledged right springs from that recognized dominion which every person has over his own property, and which is so necessary to the pursuits and duties of life. It is true that it is difficult to harmonize this dominion of the debtor with the just claims of creditors in all cases, and sometimes injustice no doubt is done in the application of the above principle. Yet, as a general principle of law, it has been long established and is well recognized.

Where, however, a man becomes insolvent, and he finds it necessary to surrender his property, in whole or in part, to his creditors, either voluntarily or by force of law, equity demands that creditors of all grades and classes should come in for a share of his estate, and all insolvent laws should be enacted to this end. The act under discussion seems to have recognized this principle, and was based upon it. But this act does not undertake to repeal the common law right referred to above except to the extent of prohibiting a preference within ninety days prior to the execution of an *assignment* for the benefit of creditors generally. At any time before ninety days prior to such assignment the right of debtors is the same since the act as before its passage.

This does not seem to be denied by the appellants, and it is not contended by them that the mere fact that Kitchens preferred the plaintiff in the mortgage and bill of sale of his personal property, and that he made provision for the payment of the estate of Patterson in the sale of his real estate to the plaintiff, *per se* renders said sales invalid and void. These sales, if regarded as ordinary transactions, and governed by the common principles in such cases, if founded upon valuable considerations and *bona fide*, would be unimpeachable. It is, however, urged that all of these papers must be considered together as one transaction, and it is insisted that when so considered they constitute in substance an assignment for the benefit of creditors, and a preference being given therein to the plaintiff and to the estate of Patterson over other creditors, they must be held void under the express terms of the act. If this be the proper construction of these papers, then this position of appellants is well founded.

But can such construction be sustained? Do these papers, when considered as a unity, amount to an assignment for the benefit of creditors, with a preference expressed in favor of the plaintiff and the estate of Patterson over all other creditors, and therefore in violation of section 2014 of the act? There is no pretence that the other section, 2015, has been violated, as there is no allegation of a sale or transfer by Kitchens within ninety days previous to the execution of the papers relied on as constituting the assignment, the position being, that all of the papers must be regarded as one transaction, and in that way constituting an assignment. Nor can it be seriously urged that these papers, when united and considered as one instrument, with the provisions in each examined as if contained in a single paper, are characterized with the form or any of the features of a general assignment for the benefit of creditors, such an assignment as the act under consideration was intended to regulate and control.

When these instruments are examined separately, the first is a mortgage in form and in all of its features, and was intended to secure the payment of a single debt to a single creditor; the second is an ordinary conveyance of real estate upon the consideration that the purchaser would pay a debt of the grantor to a third party, a valuable and legal consideration, and the third is a bill of sale of a portion of the property embraced in the mortgage, in payment of the debt intended to be thus secured. When taken together, they amount to ·a sale and conveyance by Kitchens to the plaintiff of the property therein described, upon a sufficient consideration and upon a fair and just valuation, there being no allegation that the debts secured and paid were fictitious, or that the property was taken by the plaintiff at an undervalue. In an assignment for the benefit of creditors it is usual to name the creditors specifically and individually, or at least to provide for them as a class, and generally an assignee is nominated and appointed, who upon accepting the appointment becomes a trustee, holding for the creditors who are *cestui que trusts,* and who are invested with rights under and by virtue of the assignment, which they must seek either through or against the assignee, as the facts may require.

Now, there is not an expression in either of the papers, when

considered singly or together, which indicates that it was the purpose of Kitchens to execute an assignment for the benefit of his creditors generally, under the act of assembly above. No creditors are named either individually or as a class, otherwise than as in an ordinary sale. No assignee is nominated or appointed, nor do the papers possess a single feature in form of an assignment. On the contrary, as we have already stated, nothing more appears than a sale by an insolvent debtor of his entire property to one of his creditors, in consideration of an antecedent debt due said creditor and the payment by said creditor of a debt due another creditor; the effect of which transaction, it is true, is to place the property beyond the reach of all other creditors. Such a transaction may or may not be fraudulent at common law and under the statutes of Elizabeth, dependent upon the fact of its *bona fides*, but it cannot be assailed under chapter 72 of the general statutes, as the main feature which that act requires to be present in order to be applicable is absent, *i. e.*, an assignment for the benefit of creditors.

The appellants in their argument seem to feel the force of this position when they urge that the transaction, if not against the letter of the act, is certainly against its spirit, insisting that it is a patent evasion of the manifest purpose of the act. This may or may not be true, but yet the act is specific in its terms, and describes in well understood and in precise language the class to which its sections are intended to apply, and this court cannot enlarge its provisions by embracing other classes under the light of what may be termed the spirit of the act. This would be judicial legislation instead of judicial construction. The latter power we possess, but not the former.

It was urged by appellants, as a second position, "that the transactions were void under the provisions of 13th and 27th Elizabeth." This question was not raised in the pleadings, nor was it made before the Circuit judge, or ruled upon by him. It cannot, therefore, be considered here. Whether the dealings between Kitchens and the plaintiff were fraudulent at common law or under the statutes of Elizabeth, which in substance were but legislative declarations of the common law, depend upon altogether different facts and circumstances from those which would

render them invalid under chapter 72 of the general statutes. The appellants in this case have seen proper in their pleadings to rest their defence on the provisions of the latter act, and they must stand or fall upon the case as made.

With these views I am unable to concur with the majority of the court, and this is filed as a dissenting opinion.

Judgment reversed.