### PUTNEY v. FRIESLEBEN.

Where an insolvent debtor on one and the same day confesses judgment to some of his creditors, endorsing on these judgments his consent that executions be issued forthwith, and executions are accordingly issued and levied on his entire estate, these acts constitute parts of one transaction intended to operate as a transfer of all the debtor's property to some of his creditors in preference to others, and therefore in effect an assignment contrary to the provisions of the law. *Gen. Stat.*, § 2014.

Before FRASER, J., Spartanburg, July, 1889.

This was an action by Stephen Putney & Co. and others against Abraham Friesleben and others, commenced February 6, 1887. The opinion states the case.

*Messrs. Carlisle & Hydrick* and *Nicholls & Moore*, for appellant.

*Messrs. Duncan & Sanders* and *Bomar & Simpson*, contra.

April 10, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. It seems that the defendant, Friesleben, a merchant at Spartanburg, became largely indebted to the plaintiffs and a number of other creditors for goods and merchandise, to the extent at least of three or four thousand dollars ; that these creditors, not being satisfied with the way in which the business was conducted, and particularly at not receiving payment of their demands, were about to commence proceedings to enforce payment, when, on January 10, 1887, the defendant, Friesleben, being insolvent, and, as alleged, with the intention of defeating the collection of their debts, authorized judgments by confession to be entered against himself as follows, viz.: In favor of his wife, Isabella, in the sum of $1,202; also in favor of his daughter, Anna, in the sum of $1,001.94 ; also in favor of his father-in-law, M. Kandar, in the sum of $1,840 ; also in favor of his brother in-law, H. B. Kandar, in the sum of $1,502.-25 ; also in favor of Teft, Weller & Co. in the sum of $1,325.60 ; and also in favor of Lieberman, Kaufman & Co. in the sum of $245.50. These judgment creditors took their confessions, and, with the assent of the insolvent debtor, proceeded at once to levy on his whole stock of goods, and, so far as the evidence shows, the entire estate and property belonging to him. It appears that the consent of the debtor was not simply non-resistance to the process of the law, but was deliberately embodied in the confessions of judgments in these words : "Authorized judgment to be entered against me, and execution issued forthwith." The sheriff of the county, the defendant Gentry, as directed, immediately levied upon the stock of goods belonging to the defendant debtor, and took possession of the store.

Thereupon, on February 6, 1887, the plaintiffs, in behalf of themselves and other creditors named in the complaint, instituted this action to enjoin the sale under the judgments confessed as aforesaid, and to have the same declared null and void, as fraudulent, and as in violation of the assignment act. The defendants answered, denying that the confessions of judgment were without consideration, but did not deny the allegation of insolvency on the part of the debtor, Abraham Friesleben. The cause was referred to the master, who took the testimony, and found, as

matter of fact, that the debts alleged to be due to H. B. Kandar and M. Kandar were never contracted, or, if so, that they were paid; but he held that the other creditors who have confessions of judgment have valid and binding claims against the said Friesleben. He also held that the assignment act did not take away the right to prefer one *bona fide* creditor by mortgage, judgment, or otherwise, and that the confessions here did not amount to an assignment which was void for preferences, under the assignment act.

Upon exceptions to this report, the cause came on for trial before Judge Fraser, who took the view that it was premature to inquire whether the different confessions of judgment were or were not without consideration, and void on that ground; but held that all the confessions taken together, and aggregating an amount sufficient to absorb the whole estate of the debtor, were intended to be, and were in effect, an assignment which was void as giving preferences, under the assignment act; remarking as follows: "It seems to me that under the recent cases on this subject, especially *Austin* v. *Morris*, 23 S. C., 405, and *Meinhard* v. *Strickland*, 29 *Id.*, 491, this transaction must be held to be an assignment. In the latter case the court uses this language: 'From *Wilks* v. *Walker*, * * * down to *Magovern* v. *Richard*, this court has uniformly held that while an insolvent debtor may by *bona fide* mortgages, intended merely as securities, give a preference to one or more of his creditors; yet, if such mortgages are designed to operate not merely as securities, but as the means of transferring his property to one or more of his creditors in preference of others, then they must be regarded as in effect, though not in form, an assignment, and as coming within the mischief intended to be suppressed by section 2014, *Gen. Stat.*, and must be declared null and void.' I am unable to see how a judgment by confession, and execution issued forthwith by consent, and followed up by an immediate levy upon all the property of the debtor, can be held, under the language of the court, any other than an assignment given in violation of section 2014. A careful examination of this section will show that it does not require any collusion on the part of the preferred creditor, or even any consent on his part, to render such assignments void. If, therefore,

the judgments are void as to the adults as assignments, they are equally void as to the minor, Anna Friesleben, to whom, amongst others, a confession was given. I therefore conclude that all of these judgments and executions are null and void under section 2014 of the General Statutes. It will be premature to decide now what will be the effect of this conclusion," &c.

From this decree the defendants, Teft, Weller & Co., Lieberman, Kaufman & Co., and Anna Friesleben, by her guardian *ad litem*, appeal upon the following exceptions: That his honor erred "(1) In holding that the words 'authorized judgments to be entered against me, and execution issued forthwith,' were a waiver of any indulgence which favored creditors might have been disposed to extend, and was a voluntary surrender, and accepted by a levy endorsed on these executions on the same day; (2) in holding that all these judgments and executions are null and void under section 2014 of the General Statutes, and in decreeing that they must be set aside; (3) in holding that 'it will be premature to decide what will be the effect of this conclusion on any legitimate claims these judgment creditors may have had against the insolvent debtor, or in what order the fund is to be paid out;' (4) in holding that it does not require any collusion on the part of the preferred creditor, or even consent on his part, to render such assignments void; (5) in not holding that the master erred in admitting in evidence the proceedings in attachments against A. Friesleben, and in admitting the deposition of A. Friesleben, taken before J. K. Jennings, Esq., and marked 'exhibit A,'" &c.

The only question considered by the Circuit Judge was, whether the batch of judgments confessed on January 10, 1887, and levied by the consent of the debtor, A. Friesleben, was one transaction, in fact intended, and in effect operating, as an assignment of his whole property, in payment of certain creditors to the exclusion of others, and therefore void under section 2014 of the General Statutes. That section provides as follows: "Any assignment by an insolvent debtor of his or her property for the benefit of his or her creditors, in which any preference or priority is given to any creditor of the said debtor, by the terms of the assignment, over any other creditor or creditors, * * * or in which any provision or disposition of the property so assigned is

made or directed, other than that the same be distributed among all creditors of the said insolvent debtor equally, in proportion to the amount of their several demands, and without preference or priority of any kind whatsoever, * * * shall be absolutely null and void, and of no effect whatsoever." Now, if, instead of the separate judgments by confession, the debtor, Friesleben, had made an assignment of his whole stock of goods for the preferred payment of the persons named in the separate judgments. can there be a doubt that, as against his other creditors, that assignment would have been absolutely void under the aforesaid assignment act?

It is urged, however, that the forbidden thing of preference was not accomplished by the inhibited "assignment," but by confessions of judgment regular in form and allowed by law, and therefore no violation of the law was committed. Ever since the passage of the assignment act this court has uniformly held that an insolvent debtor may prefer a creditor by *bona fide* mortgage (and, as we suppose, by judgments confessed), if they were intended merely as securities; but if such papers were only designed to operate as the means of transferring the debtor's property to one or more of his creditors in preference of others, then they must be regarded in effect, though not in form, an assignment, and, as such, null and void, because within the mischief inhibited by section 2014 of the General Statutes. See *Wilks* v. *Walker*, 22 S. C., 108; *Austin* v. *Morris*, 23 *Id.*, 405; and *Meinhard Bros. & Co.* v. *Strickland*, 29 *Id.*, 491. These cases contain the reasons for the rulings therein made, and we can add nothing to them, except to call attention to the fact that the principles therein announced have been affirmed and supported by several late cases in the Supreme Court of the United States; and among them that of *White* v. *Cotzhausen*, 129 U. S., 330, where it was held that "in Illinois the surrender by an insolvent debtor of the dominion over his entire estate, with the intent to evade the operation of the voluntary assignment act of that State, and the transfer of the whole, or substantially the whole, of his property to a part of his creditors in order to give them a preference over other creditors, whether made by one instrument or more, and whatever their form may be, ope-

rates as an assignment under that act, the benefit of which may be claimed by any unpreferred creditor who will take appropriate steps in a court of equity to enforce the equality contemplated by it," &c., citing *Miner's National Bank's Appeal*, 57 Penn. St., 193; *Winner* v. *Hoyt*, 66 Wisc., 227 ; and *Wilks* v. *Walker*, 23 S. C., 111.

In delivering the judgment of the court, Mr. Justice Harlan said : "The first question, therefore, to be considered is, whether the several writings executed by Alexander White, jr., for the purpose of effecting that result may be regarded as, in legal effect, one instrument designed to evade or defeat the provisions of the statute of Illinois, known as the voluntary assignment act. * * * We agree with the Supreme Court of Illinois, that this statute, being remedial in its character, must be liberally construed; that is, construed 'largely and beneficially, so as to suppress the mischief and advance the remedy.' * * * If, then, we avoid over-strict construction, and regard substance rather than form ; if effect be given to this legislation, as against mere devices that will defeat the object of its enactment, the several writings executed by Alexander White, jr., all about the same time, to his mother, sisters, and brothers, whereby, in contemplation of his bankruptcy, and according to a plan previously formed, he surrendered his entire estate for their benefit, to the exclusion of all other creditors, must be deemed a single instrument, expressing the purposes of the parties in consummating one transaction, and operating as an assignment or transfer, under which the appellee, Cotzhausen, may claim equality of right with the creditors so preferred. * * * If Alexander White, jr., had made a formal assignment of his entire property in trust for the benefit, primarily or exclusively, of his mother, sisters, and brothers as creditors, its illegality would have been so apparent that other creditors would have been allowed to participate in the proceeds of sale. By the conveyances, bill of sale, confession of judgment, and transfers, all made about the same time, and pursuant to an understanding previously reached, he has effected precisely the same result as would have been reached by a formal assignment to a trustee for the exclusive benefit of his mother, sisters, and brother. The latter is forbidden by the let-

32 -32

ter of the statute, and the former is equally forbidden by its spirit.  Surely, the mere name of the particular instruments by which the illegal result is reached, ought not to be permitted to stand in the way of giving the relief contemplated by the statute. Courts of Equity are not to be misled by mere devices nor baffled by mere forms," &c., &c.

This being undoubtedly the law upon the subject as declared by the highest court in the country, we must regard all the confessions of judgment made on the same day, and it may be within the same hour, as parts of one act, the effect of which was to transfer the debtor's whole estate for the benefit of certain of his preferred creditors, to the exclusion of all others; and the only remaining question is, whether the Circuit Judge erred in his finding of fact that the transaction taken as a whole was tantamount to an assignment, given with the intent to create preference and therefore in violation of the spirit and tenor of section 2014 of the General Statutes.  It certainly cannot be said that there was no testimony to support his conclusion.  The confessions of judgment were clearly not intended as mere *bona fide* securities, for they were to be enforced immediately, which it was known would necessarily close up the defendant's business.  We agree with the Circuit Judge, that the transaction was nothing more nor less than an indirect effort to transfer the whole remnant of the debtor's property to pay certain creditors to the exclusion of all others.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCIVER concurred.

MR. CHIEF JUSTICE SIMPSON.  I think that Wilks *v.* Walker and the other cases cited herein sustain the conclusion reached, and under their authority I concur.