### ALLGOOD, *ET AL.* v. ALLGOOD, *ET AL.*

#### (132 S. E., 48)

1. MORTGAGES—MORTGAGE, GIVEN TO ONE THEN DECEASED, WHICH FACT IS KNOWN TO INTERESTED PARTIES, IS VOID.—When a mortgage is executed in favor of one then deceased, and that fact is known to mortgagor and all others interested therein, such mortgage is void and incapable of enforcement.

2. REFORMATION OF INSTRUMENTS—VOLUNTARY MORTGAGE IS INCAPABLE OF REFORMATION.—Mortgage given voluntarily, and without consideration therein expressed, and without valuable consideration of any kind, is incapable of reformation in equity.

3. MORTGAGES—REFORMATION OF INSTRUMENTS—MORTGAGE, GIVEN TO DECEASED INSTEAD OF EXECUTORS, IS VOID, AND WILL NOT BE REFORMED IN EQUITY.—Where mortgage for pre-existing debts due deceased could have been given to executors of deceased's estate, but instead was given to deceased, mortgage is void, and Court of Equity will not reform it to allow executors benefit thereof.

4. FRAUDULENT CONVEYANCES—MORTGAGE, MADE WITH INTENT TO CON-
VEY PROPERTY TO EXECUTORS OF FATHER'S ESTATE AS PREFERENCE, IS
VOID (CIV. CODE 1922, § 5511).—Mortgage executed to deceased
father by one who was financially hard pressed, with intent to convey
all of his property to executors of father as preference, in violation
of Civ. Code, 1922, § 5511, is void.

Before S. T. LANHAM, SPECIAL JUDGE, Anderson, April,
1924. Reversed with directions.

Action by James E. Allgood and others as executors of
the last will and testament of Edward F. Allgood, deceased,
against John F. Allgood, Commercial Bank of Easley and
J. M. Jameson. From a decree for plaintiffs, the two last
named defendants appeal.

The decree of the trial Judge is as follows:

"In this case the plaintiffs seek the reformation and fore-
closure of a mortgage executed by the defendant, John F.
Allgood, on March 6, 1920. The defendant mortgagor
defaulted, and testifies in support of the plaintiffs' case.
The defendant, Commercial Bank of Easley, resists plain-
tiffs' action for reformation, claiming that a later mortgage
given to it by John F. Allgood should have priority. The
defendant, J. M. Jameson, is Trustee in Bankruptcy for
John F. Allgood, and files a formal answer.

"It appears that E. F. Allgood, a citizen of Anderson
County, owned a large amount of land and had a large
family of children. In 1919 he undertook to dispose of his
land—effecting nominal transfers thereof to different pur-
chasers at high prices. On January 13, 1920, he died,
leaving his estate owing a great deal of money, and holding
a great deal of this land paper, covering land, most of which
came back to the estate. He left a will, and the three plain-
tiffs and the defendant, John F. Allgood, four of his sons,
are his executors. John F. Allgood has acquired one of
these tracts of land, and on October 7, 1919, gave his note
to E. F. Allgood for purchase money, in the sum of $13,-

655.00, on which there have been payments as indicated in the report of the Special Referee.

"Shortly after the testator's death his executors set about the task of conserving, collecting and administering the estate; the other executors knew that John owed a large amount of money, although it is not shown that he was at that time insolvent or that plaintiffs knew he was insolvent, if he was. He realized that he would not be able to pay the note, and, in consideration of some extension of time, agreed with the other executors to execute and deliver a mortgage upon the land described in the paper here involved for the purpose of securing the note, which he had given for the purchase money. He applied to W. C. Smith, president of the Easley Bank, to draw the mortgage, which, on March 6, 1920, he did; making same, however, to E. F. Allgood instead of to his executors. This mortgage was recorded November 11, 1920.

"John F. Allgood became considerably indebted to the Bank of Easley, and, the Bank itself becoming involved entered into an agreement with the defendant, Commercial Bank of Easley, February 17, 1921, by which defendant Bank took over all the assets and liabilities of the Easley Bank; Mr. Smith, the president of the Easley Bank, continuing, as the agent of the Commercial Bank, to aid in adjusting its affairs, taking security for debts, making collections, etc., for the Commercial Bank. On December 30, 1921, he obtained from John F. Allgood a mortgage to the defendant, Commercial Bank, due one year after date, purporting to secure his note for $3,335.15.

"John F. Allgood filed a petition in bankruptcy in July, 1922.

"There was an order of reference referring the case to H. E. Bailey, Esq., Judge of Probate, as Special Referee, to take the testimony and report the same, together with his finding of fact therein, who has now filed his report. Among other things, the Referee found that it was the true intention

and agreement of John F. Allgood on the one side and the plaintiffs, as executors of E. F. Allgood on the other side to secure the debt of John F. Allgood, evidenced by his note referred to in the mortgage. He also reported the following findings:

" 'I find that there was no new consideration from the Commercial Bank to John F. Allgood at the time he made his mortgage to the said Bank, but that the mortgage was taken to secure antecedent indebtedness. I further find that the Commercial Bank has not been misled to its injury by the first-mentioned mortgage being made to E. F. Allgood instead of to his executors or representatives. In this connection Mr. Smith testified that he did not think that the fact that this $3,375.00 mortgage was a second mortgage would have affected the completion of the agreement between the two banks, and there was no testimony to the contrary, and I find that the evidence establishes that, at the time the second mortgage was taken by Mr. W. C. Smith (Easley Bank), acting as the agent for the Commercial Bank, said agent had both actual and constructive notice of the mortgage sought to be foreclosed in the amended complaint herein. Mr. Smith knew that Mr. Allgood was dead, having attended the funeral. He drew and witnessed the first paper, and also drew Mr. Allgood's will. Both John F. Allgood and Keith Allgood testified that, when the second mortgage was drawn, there was a discussion with Mr. Smith about it being a second mortgage, and L. C. Julian testified that he heard Mr. Smith himself say that it was a second mortgage. Mr. Smith himself says that he would not deny that John suggested that it be written into the Bank's mortgage that it was a second mortgage, although he did not recall it. He stated that he could not now say on oath that he thought then they were getting a first mortgage. The first-mentioned mortgage had been on record for more than a year, November 11, 1920, to December 1, 1921, and he testified that, if he had examined the record and found

his name as a witness, he would have recalled all the circumstances surrounding the first transaction. Under these circumstances it seems plain that there was both actual and constructive notice to the defendant Bank or to Mr. Smith, who was acting as its agent, of the existence of the first-mentioned mortgage.'

"After a careful consideration of the testimony, I am of the opinion that the Court thinks that the findings of the Referee are amply supported, and his report is, therefore, confirmed and ordered to be recorded along with this decree."

What conclusions of law ought properly to follow?

"Certain minor or preliminary questions suggested by the attorneys for the defendant Bank will be first considered.

(1) It was suggested that the executors of E. F. Allgood had no power under the will to take mortgages. It seems to me that the executors had the power to contract for security for the purpose of protecting and saving the assets of the estate. Such powers are incident to the duties of the executors to collect, preserve and hold the assets of the estate under the will.

(2) It was also suggested at the hearing by the attorneys for the Bank that the mortgage first given by John F. Allgood amounts to an assignment for the benefit of the creditors under Section 5511 of the Code, in which a preference is given the Allgood estate, but this position was not very strenuously argued. No such issue was raised by the pleadings; it does not appear that the mortgage was sufficient to operate as a general assignment; it was not proved that John F. Allgood was insolvent at the time it was given; it was not shown that this was all the real property that he had or how much personal property he had, and there was no proof that either he or E. F. Allgood's executors knew at that time that he was insolvent, if he was.

(3) The defendant Bank raised the point in its answer that there was another fund to which plaintiffs might resort

for the collection of their debt, to wit, property that would be coming to John F. Allgood under E. F. Allgood's will, but this point was not strongly pressed. The Referee says: "I do not find that the defendant has established that there is any such fund available for the payment of said debt." In this conclusion I think that the Referee is correct. Moreover, under the terms of this will it would be a long time before it is determined whether there will be anything coming to John at all or not, and the owners of the mortgage who seek foreclosure cannot be postponed to any such settlement.

This brings the Court to the main question in the case: (1) As between the plaintiffs on the one hand and John F. Allgood on the other, has a proper case for reformation been made out? (2) If the plaintiffs have presented against John F. Allgood a proper case for reformation, can the Bank show any just cause to defeat the decree for such relief?

1. Do the facts in the case present a proper case for reformation as against John F. Allgood?

No reason is perceived why, as a general rule, an instrument may not be reformed as to parties thereto as well as in any other particular. "A mistaken use of the names of parties appearing in a contract may be rectified in order to carry out the real intention of the contractors." 34 Cyc., 934.

Compare *Chapman v. Williams,* 100 S. E., 360; 112 S. C., 402, which recognizes that upon proper proof of contract a mortgage may be reformed by changing the name of the obligee.

In a case like this, where the parties to the instrument had a clear agreement or understanding, and the effort to express the true agreement fails by reason of a mistake of the scrivener, the Court will reform the instrument whether the mistake be one of fact or of law. It cannot be doubted for an instant that the real purpose of the parties to the instrument was to secure the estate of E. F. Allgood, and that the mistake of the draftsman prevented the real agreement from being embodied in the written instrument. See *Brock v.*

*O'Dell,* 21 S. E., 976; 44 S. C., 22, 31, 32, 33. *Wilson v. Watkins,* 26 S. E., 666; 48 S. C., 341. *Whitehill v. Dacus,* 27 S. E., 201; 49 S. C., 277. *Austin v. Hunter,* 67 S. E., 734; 85 S. C., 472. *Mathis v. Hair,* 99 S. E., 810; 112 S. C., 320; and *Byrd v. O'Neal,* 91 S. E., 293; 106 S. C., 346. *Sullivan v. Moore,* 75 S. E., 497; 92 S. C., 305. *Jones v. Kelly,* 78 S. E., 17; 94 S. C., 349. *Jumper v. Lumber Co.,* 106 S. E., 478; 115 S. C., 452.

In the case of *Brock v. O'Dell,* our Supreme Court says:

"The principle upon which Courts enforce a reformation of an instrument is that preceding the execution of the instrument, and as the inducement to its execution, the parties to the same had an understanding, an agreement, a contract, and in the effort to reduce the evidence in writing of that contract, a mutual mistake was made, by which mistake so made, the understanding, the agreement, the contract of the parties in relation to the subject matter thereof, was not carried into effect. There is no ignorance of law in such a contingency. The parties knew what they wished to have done, and had agreed that it should be done; the mistake occurred in the preparation of the instrument, which was intended to embody that agreement, understanding, contract. * * *

"Mr. Pomeroy, in his work on Equity Jurisprudence, § 843, thus states this principle of law: 'The first instance I shall mention is closely connected with the doctrine stated in the last paragraph but one. It was there shown *that, if an agreement was what it was intended to be,* equity would not interfere with it because the parties had mistaken its legal import and effect. If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by *means of a mistake in law,* fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of

the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the *contract actually made;* but the mistake of law *prevents the real contract from being embodied* in the written instrument. In short, if a written instrument fails to *express the intention* which the *parties had* in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation *of the terms or language employed in the writing.* Among the ordinary examples of such errors are those as to the legal effect of a description of the subject matter, and as to the import of technical words and phrases, but the rule is not confined to these instances.' " (Italics mine.)

In *Whitehill v. Dacus,* the Court, referring to other equitable relief, says:

"In the second place, if the above view is untenable, the judgment below should be affirmed, on the ground that the releases were executed and accepted under a mutual mistake in law. Whatever may be the rule elsewhere, it is settled in this State that a Court of Equity has jurisdiction to set aside a contract on the ground of mistake in law."

In *Lawrence v. Clark,* 104 S. E., 330; 115 S. C., 67, the decree of the Circuit Court, which was not questioned in the Supreme Court upon that point, reads as follows:

"It may be stated in the outset that the law is well settled in this State that, where two parties have had an understanding, agreement, or contract, and in the effort to reduce this understanding to writing a mutual mistake was made by which mistake the intention of the parties with regard to the subject matter was not carried into effect, a Court of Equity will enforce a reformation of the instrument. It will not alter or change the contract or agreement between the parties, but will alter the written instrument so as to

make it conform to the original contract which the parties agreed upon."

The Court holds that the plaintiffs have made out a proper case for reformation against John F. Allgood. Has the Bank established any defense to the cause of action for such relief? In equity, is said Bank in a position to defeat the plaintiffs in their effort to obtain such relief?

2. This brings us to two principal questions raised by the Bank: (1) Whether the attempted mortgage first given by John F. Allgood, by reason of being made to a person not then in existence, is such a nullity that it cannot be reformed; (2) whether the Bank makes out the defense of *bona fide* purchaser without notice.

In the case of *Lawrence v. Clark,* 104 S. E., 334; 115 S. C., the Supreme Court, at page 81, says:

"When a Court orders the reformation of a deed, the reformed deed necessarily speaks as of the date of the original execution. Equity says that the reformed deed is to be considered as the true deed, subject, of course, to the rights of subsequent creditors and purchasers for value, who may have been misled to their injury."

(1) We will consider the first contention of the Bank. It was urged at the hearing that the mortgage sued on was void for want of proper parties; that it purported to be given to E. F. Allgood, a deceased person, and was, therefore, a nullity, and, being a nullity, could not be reformed. Of course, it is essential to the validity of every agreement or instrument that the parties should be in existence and competent to contract; but it seems to me that in this instance the parties were in existence and competent to contract, and that by mistake of the draftsman the instrument merely failed to show the proper mortgagees in the mortgage. It was not the true intention of the makers of the instrument to name E. F. Allgood as the mortgagee; if it had been, there could be no question that the mortgage would be void. This is the real ground of distinction be-

tween the case at bar and cases cited in the argument of attempted deeds to persons not in existence. There are many cases of attempted deeds to the heirs of living persons or to the children of a living person when he has no children. In such case there could be no delivery, but in such case there is no real intention that the names of the grantees should be other than what they were, and, therefore, in such case there is no basis for reformation.

In *Wilson v. White,* 24 P., 114, 115; 84 Cal., 239, 242, cited in 27 Cyc., 1041, Note 35, it is said:

"If there be no grantee, and the deed is to a mere fictitious name, it is obvious that it is a nullity. But if there be a person in existence and identified, and delivery is made to him, it makes no difference by what name he is called. He may assume a name for the occasion; and a conveyance to and by him under such name will pass the title."

In 8 R. C. L., 951, it is said:

"It is a rule asserted from early times that no grant can exist without a grantee. This is, of course, axiomatic, for the title cannot pass from the grantor unless it passes to some one; and it is also axiomatic that a deed must have both a grantor and a grantee, and one person cannot occupy, at law, at the same time, the position of both grantor and grantee in regard to the same property. As a corollary to the rule that there must be a grantee, it is declared in many cases that a deed or grant to a person who does not exist at the time of the grant is void, which, as a general rule, is an unassailable propostion when taken as referring to an intentional attempt to make such conveyance, though not when taken literally and without qualification."

Compare *Davis v. Hollingsworth,* 38 S. E., 827; 113 Ga., 210; 84 Am. St. Rep., 233. Deed to children of Mary, who as yet had no children. The Court, of course, held:

"A deed to an immediate estate in land made to a person not *in esse* is absolutely void," and the title remained where it was. There are other cases to the same effect, but these

deeds were intended to be made to persons known to be dead or not yet born. There was no mistake in drafting, no real grantee in existence, and, therefore, no basis for reformation.

It is further said in 8 R. C. L., 952:

"When the person formerly bearing the name written in the deed is known to both parties to be dead, the inference is very strong that by the use of that name they mean to designate, not the dead man, but some existent person or persons and, considering the whole situation of the parties, the Court may give effect to the deed as intending to pass title to the executor."

A modern case more nearly like the case at bar is *City Bank v. Plank,* 124 N. W., 1000, 1001; 141 Wis., 653, 656, 657 (135 Am. St. Rep., 62; 18 Ann. Cas., 869). In this case a deed to a deceased grantee was upheld and reformed, where it appeared that all parties knew the grantee to be dead, and that it was the desire and intention to convey to the executor of the deceased grantee, in this official capacity, so that the land in question might be subject to a charge in favor of the widow. The lower Court held that this deed, "running to a person already dead, was absolutely void and of no effect," but the Supreme Court unanimously reversed the holding; saying:

"It is a rule asserted from early times that no grant can exist without a grantee. This is, of course, axiomatic. The title cannot pass from the grantor unless it passes to some one. As a corollary, it is declared in many cases that a deed or grant to a person who does not exist at the time of the grant is void. Such statements are unassailable, if properly understood. If the grant, in the intention of the parties, is attempted to be made to some person who has no existence, it cannot take effect. *Neal v. Nelson,* 23 S. E., 428; 117 N. C., 393; 53 Am. St. Rep., 590. Many technical rules, however, have yielded to more rational views in modern times. The real intention of the parties is to be sought and

effectuated by Courts when possible. If it was the intention both of grantor and grantee that the grant should be to some person or persons in existence, that intent may be effectuated by ascertaining under proper rules of evidence the intention of the parties, although such person be not designated by his legal or usual name. It has been said in many cases that a conveyance to a partnership name could have no validity because a partnership has no legal existence. But the overwhelming weight of modern authority is that Courts may ascertain the fact that certain existent individuals are accustomed to be called by the association name, either corporate or copartnership, and draw the inference that those persons were intended to be the recipients of the title, although their true names did not appear in the firm name at all, and even if the names of other existent persons did so appear. Again, it is recognized in a multitude of cases that, if the Court can find that a certain person was intended as grantee, it matters not what name is given him in the deed. The case of *Staak v. Sigelkow,* 12 Wis., 234, is an illustration. The proposition is broadly stated in *Case v. Fish,* 22 N. W., 322; 63 Wis., 474, 479 [475]; and *Conroe v. Case,* 48 N. W., 480; 79 Wis. 338. When parties deliberately on one side make a conveyance and on the other side receive the same and pay a consideration therefor, there is a most irresistible inference that a conveyance is intended. Such intent of necessity involves the further conclusion that the parties had in mind some person or persons to whom the property should pass. When a person well known is named, and that person has gone out of existence without the knowledge of the parties, it may well be that no inference is justifiable that any one else was intended; but when the person formerly bearing the name written in the deed is known to both parties to be dead, the inference is very strong that by the use of that name they mean to designate, not the dead man, but some existent person or persons. In such case the authorities mainly support the power of Courts to inquire

into the situation, the general design of the parties, the equities between them, and the like, in order to infer who was intended, or who equitably ought to have been. It is analogous to the use of a name never, to the knowledge of either party, borne by any person, i. e. a fictitious name, as in *Staak v. Sigelkow,* 12 Wis., 234. *Chapman v. Tison,* 81 P., 1066; 39 Wash., 523. *Clifton Heights Land Co. v. Randell,* 47 N. W., 905; 82 Iowa, 89. *Wilson v. White,* 24 P., 114; 84 Cal., 239. *Thomas v. Wyatt,* 31 Mo., 188; 77 Am. Dec., 640. *Simmons v. Spratt,* 8 So., 123; 26 Fla., 449, 460; 9 L. R. A., 343."

From an equitable viewpoint the objection does not appeal to the Court. We have before the Court competent contracting parties in existence and identified. We have a complete concurrence of intention or meeting of the minds, and actual delivery of the instrument was made. Equity will look to the real intention of the parties to secure the debt, and will enforce the agreement, unless subsequent purchasers or creditors can show a proper case to defeat plaintiff's action.

(2) I shall next consider the bank's second contention—that it has made out the defense of *bona fide* purchaser without notice. The defense of *bona fide* purchaser without notice set up by Commercial Bank is an affirmative defense; and all of its essentials must be proved by the Bank. *Lupo v. True,* 16 S. C., 579, 586, 587. *Robert v. Ellis,* 37 S. E., 250; 59 S. C., 146, 147. *Carr v. Muzon,* 76 S. E., 201; 93 S. C., 166; 167 Ann. Cas., 1914-C, 731.

"The essential elements which constitute a *bona fide* purchase are, therefore, three—a valuable consideration, the absence of notice, and the presence of good faith." Pomeroy's Eq. Jurisprudence, § 745.

The Bank has not made out its defense in this case for the following reasons:

(1) It must show a new and not an antecedent valuable consideration actually paid, and in this case the Bank's mort-

gage was admittedly taken to secure an antecedent indebtedness. *Marsh v. Ramsay,* 35 S. E., 433; 57 S. C., 121, 125; Pomeroy, Eq. Jurisprudence, § 749. *Cooke v. Pool,* 25 S. C., 599. *Zorn v. Railroad Co.,* 5 S. C., 90. The Bank must show that such consideration was actually paid before notice of the prior mortgage, for otherwise it could have had relief against such payment. *Lynch v. Hancock,* 14 S. C., 90, 91. *Robert v. Ellis,* 37 S. E., 250; 59 S. C., 147. *Summers v. Brice,* 15 S. E., 374; 36 S. C., 204.

(2) The Bank must allege and prove (a) absence of notice, actual or constructive; (b) and presence of good faith. Pomeroy, Eq. J., 746. See *Brayton v. Beall,* 53 S. E., 641; 73 S. C., 312, and *R. R. Co. v. Bank,* 26 S. E., 238; 48 S. C. 135. Also see *Mosler Safe & Lock Co. v. Mosler B. & Co.,* 8 S. Ct., 1148; 127 U. S., 354; 32 L. Ed., 182; N. 99, b 1, 2, 3, 4, and 5. *Barr v. Kinard,* 3 Strob. 73, 77. *Black v. Childs,* 14 S. C., 312. *Dillon v. Oliver,* 91 S. E., 304; 106 S. C., 415. *Aultman v. Utsey,* 13 S. E., 848; 34 S. C., 567, 568. *Carrigan v. Byrd,* 23 S. C., 89-95. *Union, etc., Bank v. Cook,* 96 S. E., 484; 110 S. C., 110.

Upon the question of good faith, it may be remarked that, if the Commercial Bank could show that it had acted in good faith upon reliance on the old mortgage, and that injury had resulted to it by reason of such reliance, it might be in a position to invoke the aid of a Court of Equity, but the right of reformation is subject to the rights of subsequent creditors and purchasers for value, who may be misled to their injury. (*Lawrence v. Clark,* 104 S. E., 330; 115 S. C., 81), and the Court is satisfied that the defense of innocent purchaser has not been made out.

It is, therefore, adjudged, ordered and decreed that the exceptions to the Referee's report herein be overruled, and that the report be confirmed and made the basis of this decree. That the plaintiff have judgment against the defendant, John F. Allgood, for the sum of $13,655.00, together with interest at the same rate, less the payments mentioned in

the Referee's report to wit, $1,080.00 payments mentioned in the Referee's report, to wit, $1,080.00 on January 1, 1920, $246.71 on January 2, 1921, and $567.63 on December 3, 1922, together with 10 per cent. as attorney's fees. That the defendant, Commercial Bank, have judgment against its codefendant, John F. Allgood, for the sum of $3,375.15, with interest as claimed, and 10 per cent. attorney's fees.

That the real estate described in the complaint be sold at public outcry by the Probate Judge of Anderson County as Special Referee, on the first convenient salesday, after due advertisement, for cash, to the highest bidder. That the successful bidder at said sale shall deposit with said Probate Judge as Special Referee before he shall accept such bid, cash or certified check in the sum of $100.00, as evidence of his good faith, and, if the said purchaser shall comply with his bid within the usual reasonable time, the Probate Judge shall make him a good and sufficient deed to said real estate, but, if said purchaser shall fail to comply, then said lands shall be resold on the same or some subsequent salesday as often as may be necessary, and at the risk of the former purchaser, until a purchaser shall be found who shall comply, said subsequent sales to be made upon the same terms as the first sale, and, in the event of such resale, the said sum of $100.00 deposited as aforesaid shall be applied upon plaintiffs' judgment herein, and not returned to the former bidder, unless said land shall bring a sufficient amount to pay said judgment and costs as well as the judgment of the defendant Bank. That the successful purchaser shall be let into the possession of the premises upon production of his deed from the Probate Judge as aforesaid; and the Probate Judge shall apply the proceeds of the sale—first, to the satisfaction of plaintiffs' judgment, including interest, costs and attorneys' fees; second, to the payment of the judgment of the defendant, Commercial Bank, and to pay any balance to the defendant, J.

M. Jameson, as Trustee in Bankruptcy, of John F. Allgood.

The Probate Judge shall report such sale to this Court with all convenient speed, and specify in his report the amount of any deficit upon either one or both of the mortgages foreclosed in this case, and the parties shall have leave to enter upon judgment and issue execution for any deficiency.

It is first heard, ordered, and decreed that the defendant, John F. Allgood, and all persons claiming under him, be forever barred and foreclosed of all right, title, interest, and equity of redemption in the said mortgaged premises sold or any part thereof.

Following is a description of the mortgaged premises herein referred to:

"All that certain piece, parcel, or tract of land lying and being situate in Garvin Township, State and County above named, adjoining lands of J. A. Allgood, K. E. Allgood, Bernice Martin, J. S. Wilson, and Mr. Reams, and known as Tract No. 3 in the division of lands of E. F. Allgood, and containing 249 acres, more or less; being the same tract conveyed by J. E. Allgood to J. F. Allgood by deed recorded in office of R. M. C. for Anderson, S. C."

*Messrs. Carey & Carey, Watkins & Prince,* and *Dean, Cothran & Wyche,* for appellants, cite: *Deed to person not living void:* 115 S. E., 114; 97 S. E., 854; 50 S. E., 961; 38 S. E., 827; 113 Ga., 210; 84 A. S. R., 233; 23 S. E., 428; 73 Am. Dec., 543; 1 Devlin on Real Estate, 3rd Ed., 273. *Mortgagee holds legal title to lien created by mortgage:* 12 S. C., 488. *Mortgagor and mortgagee necessary to valid mortgage:* 27 Cyc., 1041; 19 R. C. L., 289. *Mortgage must be delivered:* 19 R. C. L., 280. *Voluntary instrument not subject to reformation:* 115 S. C., 67. *No relief granted for mistake of law:* 57 S. C., 386; 35 S. E., 733; 40 S. C., 92; 36 S. C., 569; 26 S. C., 41; 20 S. C., 317; 6 S. C., 485. *Cases distinguished:* 113 S. E., 78; 109 S. E., 148; 107 S. E., 320; 116 S. C., 97; 115 S. C., 452; 44 S.

C., 22. *Court construes contracts:* 112 S. C., 402. *Equity will not aid one creditor against another:* 115 S. C., 67; 40 Ohio St., 632; 26 Ohio St., 471; 23 N. J. Eq., 13; 34 Cyc., 953. *Preferential assignment by insolvent debtor:* 125 S. C., 65; 44 S. C., 189; 32 S. C., 496; 22 S. C., 180; Civ. Code 1922, Sec. 5511. *Executors and administrators without power to bind estate:* 2 Brev., 360; McM. Eq., 495.

*Messrs. Martin & Blythe* and *Craig & Keith,* for respondent, cite: *Exceptions on appeal:* Rule 5 of Supreme Court, 1922, Sec. 6. *Improper exceptions not considered:* 125 S. E., 641; 124 S. C., 458; 117 S. E., 735; 123 S. C., 360. *Questions not passed on by Circuit Court and not covered by exception, not heard on appeal:* 115 S. C., 469; 106 S. E., 470. *Unrecorded mortgage valid against unsecured creditor:* 125 S. C., 332; 118 S. E., 290. *Voluntary conveyance:* 8 Words & Phrases, 7345; 4 Words & Phrases,, 2nd Series, 1203; Washburn on Real Property, 3rd Ed., 320. *Pre-existing indebtedness as valuable consideration:* 39 S. C., 146; 43 Neb., 224; 47 A. S. R., 753. *Preferences by insolvent debtors:* 126 S. C., 88; 43 Neb., 224; 47 A. S. R., 753; 12 R. C. L., 572.

January 28, 1926.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a decree of Hon. S. T. Lanham, Special Judge. His decree recites the facts of the case, and will be reported.

The exceptions, 21 in number, challenge the correctness of his decree. One group of exceptions maintain that, when a mortgage is executed in favor of one then deceased, and that fact is known to the mortgagor and to all others interested therein, such mortgage is void and incapable of enforcement; and that, when a mortgage is given voluntarily, and without the consideration therein

expressed, and without a valuable consideration of any kind, such mortgage is incapable of reformation in equity. Those exceptions must be sustained under the rule expressed in 8 R. C. L., 951. *Handy v. Handy,* 115 S. E., 114; 154 Ga., 686; Devlin on Real Estate (3rd Ed.), 273. *Hunter v. Watson,* 12 Cal., 363; 73 Am. Dec., 543. *Neal v. Nelson,* 23 S. E., 428; 117 N. C., 393; 53 Am. St. Rep., 590; 27 Cyc., 1041. *Bank v. Dondna,* 7 Ohio Dec. Reprint, 532; 19 R. C. L., 280, 289.

The mortgage could have been given to the executors, but was not. It is not such a case under the facts as a Court of Equity should reform and allow the executors to get the benefit of the mortgage which is void.

It was the intent of John F. Allgood, who was hard pressed and subsequently went into bankruptcy, to practically convey all of his property to the executors of his father as a preference in violation of Section 5511, Civ. Code, and the decisions of this Court. *Wilkes v. Walker,* 22 S. C., 108; 53 Am. Rep., 706. *Putney v. Friesleben,* 11 S. E., 337; 32 S. C., 496. *Porter v. Stricker,* 21 S. E., 635; 44 S. C., 189; and *Marion v. Weston,* 119 S. E., 582; 126 S. C., 65.

There is no doubt that Allgood was trying to secure a debt due his father's estate by giving a mortgage to his father of his entire property so that his own people should profit thereby to the exclusion of the general creditors.

The mortgage given was void in the first instance, and, if it was not, then it was in violation of the Assignment Statute.

The decree of Judge Lanham is reversed as to the mortgage given by Allgood to his father, and the next mortgage is entitled to foreclosure and the proceeds of sale therefrom.

MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concurs.

MR. JUSTICE COTHRAN and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur in result.

MR. CHIEF JUSTICE GARY did not participate.

MR. JUSTICE COTHRAN: I concur in result, preferring to reserve my opinion upon the question of reformation. I am inclined to think that, if the agreement to execute a mortgage to secure Allgood's debt to the estate had been otherwise valid, the erroneous naming of the dead man as mortgagee could properly have been corrected by reforming the mortgage so as to name the executors as mortgagees; the agreement having been made with them, and the mortgage delivered to, and recorded by them. I agree to the conclusions as to the other questions.